## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOEL ROSENFELD, on Behalf of Himself and All Others Similarly Situated, | ) Case No. ) ) |
| Plaintiff, | ) <u>CLASS ACTION</u> ) |
| vs. | ) **CLASS ACTION COMPLAINT** ) **FOR VIOLATIONS OF THE** ) **FEDERAL SECURITIES LAWS** ) |
| TIME INC., RICHARD BATTISTA, DAVID A. BELL, JOHN M. FAHEY, MANUEL A. FERNANDEZ, DENNIS J. FITZSIMONS, BETSY D. HOLDEN, KAY KOPLOVITZ, RONALD S. ROLFE, DANIEL L. ROSENSWEIG, KATIE J. STANTON, and MICHAEL P. ZEISSER, | ) JURY TRIAL DEMANDED ) ) ) ) ) ) ) ) |
| Defendants. | ) ) ) |

Plaintiff Joel Rosenfeld ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1.      This is a class action brought on behalf of the public stockholders of Time Inc. ("Time" or the "Company") against Time and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(d)(4), 14(e) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(d)(4), 78n(e), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14d-9, 17 C.F.R. §240.14d-9(d) ("Rule 14d-9") and to enjoin the expiration of a tender offer (the "Tender Offer") on a proposed transaction, pursuant to which Time will be acquired by Meredith Corporation ("Meredith")

through its wholly-owned subsidiary Gotham Merger Sub, Inc. ("Purchaser") (the "Proposed Transaction").

2.    On November 26, 2017, Time issued a press release announcing that it had entered into an Agreement and Plan of Merger (the "Merger Agreement") to sell Time to Meredith.  Under the terms of the Merger Agreement, Meredith will acquire all outstanding shares of Time for $18.50 in cash per share of Time's common stock (the "Offer Price").  Pursuant to the Merger Agreement, Meredith, through Merger Sub, commenced the Tender Offer on December 12, 2017.  The Tender Offer is scheduled to expire at 11:59 p.m., New York City time on January 10, 2018.  The Proposed Transaction is valued at approximately $2.8 billion.

3.    On December 12, 2017, Time filed a Solicitation/Recommendation Statement on Schedule 14D-9 (the "Recommendation Statement") with the SEC.  The Recommendation Statement, which recommends that Time stockholders tender their shares in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) Time's financial projections, relied upon by Time's financial advisors, Morgan Stanley & Co. LLC ("Morgan Stanley") and Merrill Lynch, Pierce, Fenner & Smith Incorporated (BofA Merrill Lynch") in connection with rendering their fairness opinions; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinions provided by Morgan Stanley and BofA Merrill Lynch; (iii) the background process leading to the Proposed Transaction; and (iv) potential conflicts of interest faced by Morgan Stanley and Company insiders.  The failure to adequately disclose such material information constitutes a violation of Sections 14(d), 14(e) and 20(a) of the Exchange Act as Time stockholders need such information in order to make a fully informed decision whether to tender their shares in support of the Proposed Transaction or seek appraisal.

4.     In short, the Proposed Transaction will unlawfully divest Time's public stockholders of the Company's valuable assets without fully disclosing all material information concerning the Proposed Transaction to Company stockholders.  To remedy defendants' Exchange Act violations, Plaintiff seeks to enjoin the expiration of the Tender Offer unless and until such problems are remedied.

## JURISDICTION AND VENUE

5.     This Court has jurisdiction over the claims asserted herein for violations of Sections 14(d)(4), 14(e) and 20(a) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6.     This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Plaintiff's claims arose in this District, where a substantial portion of the actionable conduct took place, where most of the documents are electronically stored, and where the evidence exists.  Time is incorporated in Delaware and is headquartered in this District.  Moreover, each of the Individual Defendants, as Company officers or directors, either resides in this District or has extensive contacts within this District.

## PARTIES

8.      Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Time.

9.      Defendant Time is a Delaware corporation with its principal executive offices located at 225 Liberty Street, New York, New York 10281.  The Company is a multi-platform consumer media company that engages over 230 million consumers globally every month. Time's common stock is traded on the New York Stock Exchange under the ticker symbol "TIME."

10.     Defendant Richard Battista ("Battista") has been President, Chief Executive Officer ("CEO"), and a director of the Company since September 2016.

11.     Defendant David A. Bell ("Bell") has been a director of the Company since 2014.

12.     Defendant John M. Fahey, Jr. ("Fahey") is non-executive Chairman of the Board and has been a director of the Company since 2014.

13.     Defendant Manual A. Fernandez ("Fernandez") has been a director of the Company since 2014.

14.     Defendant Dennis J. FitzSimons ("FitzSimons") has been a director of the Company since 2014.

15.     Defendant Betsy D. Holden ("Holden") has been a director of the Company since 2014.

16.     Defendant Kay Koplovitz ("Koplovitz") has been a director of the Company since 2014.

17.     Defendant Ronald S. Rolfe ("Rolfe") has been a director of the Company since 2014.

18.    Defendant Daniel L. Rosensweig ("Rosensweig") has been a director of the Company since July 2017.

19.    Defendant Katie J. Stanton ("Stanton") has been a director of the Company since August 2017.

20.    Defendant Michael P. Zeisser ("Zeisser") has been a director of the Company since 2016.

21.    Defendants identified in paragraphs 10-20 are collectively referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT ENTITIES

22.    Meredith is an Iowa corporation with its principal executive offices located at 1716 Locust Street, Des Moines, Iowa 50309-3023.  Meredith is a media and marketing services company, based on the home, family, food and lifestyle markets.  Meredith's common stock is traded on the New York Stock Exchange under the ticker symbol "MDP."

23.    Purchaser is a Delaware corporation and wholly-owned subsidiary of Meredith.

## CLASS ACTION ALLEGATIONS

24.    Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons and entities that own Time common stock (the "Class").  Excluded from the Class are defendants and their affiliates, immediate families, legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

25.    Plaintiff's claims are properly maintainable as a class action under Rule 23 of the Federal Rules of Civil Procedure.

26.     The Class is so numerous that joinder of all members is impracticable.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through discovery, Plaintiff believes that there are thousands of members in the Class.  As of December 11, 2017, there were 99,622,569 shares of Company common stock issued and outstanding.  All members of the Class may be identified from records maintained by Time or its transfer agent and may be notified of the pendency of this action by mail, using forms of notice similar to those customarily used in securities class actions.

27.     Questions of law and fact are common to the Class and predominate over questions affecting any individual Class member, including, *inter alia*:

(a)     Whether defendants have violated Section 14(d)(4) of the Exchange Act and Rule 14d-9 promulgated thereunder;

(b)     Whether the Individual Defendants have violated Section 14(e) of the Exchange Act;

(c)     Whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

(d)     Whether Plaintiff and the other members of the Class would suffer irreparable injury were the Proposed Transaction consummated.

28.     Plaintiff will fairly and adequately protect the interests of the Class, and has no interests contrary to or in conflict with those of the Class that Plaintiff seeks to represent. Plaintiff has retained competent counsel experienced in litigation of this nature.

29.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy.  Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

30.    Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

## SUBSTANTIVE ALLEGATIONS

### Company Background and Strong Financial Outlook

31.    On June 6, 2014, Time Warner Inc. ("Time Warner") completed the legal and structural separation of its magazine publishing and related business (the "Spin-Off") through a pro rata dividend of Time shares held by Time Warner to its stockholders as of May 23, 2014, based on a distribution ratio of one share of Time common stock for every eight shares of Time Warner common stock.  Following the Spin-Off, Time Warner stockholders became the owners of all the outstanding shares of Time common stock and Time began operating as an independent, publicly-traded company.

32.    Time is a multi-platform media and content company that engages over 150 million consumers every month through its portfolio of news and lifestyle brands.  The Company's influential brands include People, Time, Fortune, Sports Illustrated, InStyle, Real Simple, Southern Living, Entertainment Weekly, Food & Wine, Travel + Leisure and Essence, as well as approximately 50 diverse titles in the United Kingdom.  Time's brands extend into other media and platforms including licensing, video and television, live events and paid products and services.  The Company has approximately 30 million paid subscribers, making it one of the largest direct marketers in the U.S. media industry.

33.    On May 10, 2017, the Company announced its first quarter 2017 financial results and its goal to focus on its strategic plan.  Defendant Battista was optimistic about Time's plan for the coming months, noting:

In the first quarter of 2017, we made important progress on our strategic plan despite continuing challenges with print advertising revenues. We are taking strategic actions and focusing on key initiatives to put the Company on the right course for the future. We are creating a more vibrant and valuable platform for our advertisers and consumers, further enhancing financial flexibility, aggressively reducing our cost base, rationalizing our portfolio and continuing to invest in transformational growth initiatives. Importantly, our Board of Directors' April 28 announcement affirming our strategic plan has removed a major distraction for our people and advertisers. While we have a lot of work to do, Time Inc. is very well positioned to emerge as a winner in the rapidly changing consumer and media marketplace.

34.     On August 8, 2017, Time announced its second quarter 2017 financial results as well as a strategic transformation program for the Company.  Despite the challenges Time faced in the industry, defendant Battista remained positive, stating:

I am pleased with our second quarter Adjusted OIBDA of $88 million, which was roughly flat year-over-year. Our revenues continued to be impacted by disruption through the first half of 2017, as we said on our last call. Despite that revenue disruption, we executed in a highly disciplined way, which enabled us to beat Adjusted OIBDA expectations. The third quarter represents an important turning point for the Company as we are seeing strong momentum and sequential improvement of year-over-year trends for total advertising revenues. Today, we are reaffirming our 2017 Adjusted OIBDA outlook.

On our last earnings call, we outlined aggressive actions—building on what we had accomplished to date—to reduce costs, expand margins, rationalize our portfolio and extend our brands into new growth revenue streams. We've been moving with speed and, most significantly, we are announcing today, a strategic transformation program based on a thorough review of Time Inc.'s business. Through this review, we have greater confidence in our path to accelerate the optimization of costs and revenue growth drivers. We have already targeted more than $400 million of run-rate cost savings, with the majority of initiatives expected to be implemented over the course of the next 18 months. We plan to use a portion of these savings to invest in our future in key growth areas including native and branded content, video, data and targeting, paid products and services, and brand extensions. With this program, we expect to realize significant cost savings and reinvest in our future, and we see a path to a minimum range of $500 million to $600 million of Adjusted OIBDA within the next three to four years.

35.     On November 9, 2017, Time reported its third quarter 2017 financial results.  For the quarter, the Company reported operating income of $51 million, compared to operating loss

of $167 million for the third quarter of 2016.  Adjusted OIBDA was $115 million for the quarter, compared to $100 million in the third quarter of 2016.  Defendant Battista was pleased with the quarter's financial results, stating:

> We delivered strong operating and financial metrics in the third quarter despite the challenging print environment. Our Adjusted OIBDA of $115 million grew 15% and we continued to execute on our disciplined cost plan and grow our non-Magazines revenue. We expect revenue derived from Digital and Brand Extensions & Other sources to reach approximately $1 billion in 2017. In addition, our Free cash flow grew 18% to $73 million, our best quarterly result for this metric since 2014. During the third quarter, we successfully launched our Strategic Transformation Program to drive revenue optimization opportunities, new investments in key growth areas and more than $400 million of targeted run-rate cost savings. In October, we also closed on a series of refinancing transactions that extended our debt maturities and balanced our capital structure providing us with improved financial flexibility. Furthermore, we are reaffirming our 2017 Adjusted OIBDA Outlook of at least $400 million with a plan to be flat year-over-year.

> Our new management team remains focused on executing effectively against our growth strategy to sustain the strength of our print products, increase our growing digital revenues and extend our brands through high-margin, high-value offerings. With monthly U.S. unique visitors reaching a record 139 million across Time Inc., we are committed to leveraging our massive scale and powerful brand portfolio to serve our consumers anytime, anywhere.

**The Process Leading Up to the Proposed Transaction**

36.     Prior to the Spin-Off, Meredith had engaged in negotiations with Time Warner regarding a potential acquisition.  These negotiations did not result in a transaction and Time Warner determined to proceed with the Spin-Off.

37.     On April 19, 2016, representatives of an investor group, referred to in the Recommendation Statement as "Party A," sent the Board a proposal to acquire the Company for $18.00-$20.00 per share.  Following discussion, the Board declined the offer.

38.    In the summer of 2016, Time and Meredith began a process, led by a jointly engaged management consulting firm, to explore potential cost savings that could be achieved by combining back-office and procurement functions.

39.    On October 11, 2016, defendant Battista held a meeting with Steve Lacy ("Lacy"), the CEO of Meredith, to discuss a business combination.

40.    On October 20, 2016, Party A sent a proposal to the Board, substantially similar to the April 19, 2016 proposal, for $18.00-$20.00 per share.

41.    Later in October 2016, a representative of an investor group, referred to in the Recommendation Statement as "Party B," called defendant Battista to discuss the possibility of a sale transaction involving the Company.

42.    Following Board meetings, the Board directed defendant Battista to inform Meredith and Party A that Time would likely be in a position to make a decision regarding whether to pursue a transaction once it completed its strategic review in the first quarter of 2017. In his call with Meredith to relay the Board's decision, defendant Battista indicated that the Company would continue working with Meredith on the project to explore cost-saving opportunities and agreed that the two companies should keep an open line of communication and revisit the possibility of a business combination in early 2017.

43.    On November 18, 2016, a representative of a strategic party, referred to in the Recommendation Statement as "Party C," sent defendant Battista a letter proposing to acquire People, InStyle, Entertainment Weekly, Sports Illustrated and Time Inc. Retail.

44.    At a November 29, 2016 Board meeting, defendant Battista informed Party C the Company was not interested in pursuing a sale of individual titles.

45.    On December 9, 2016, Party B submitted a proposal to defendant Battista to acquire the Company in an all-cash transaction valued at $18.00-$20.00 per share.

46.    On December 19, 2016 and January 9, 2017, defendant Battista met with a representative of a party, referred to in the Recommendation Statement as "Party D," who expressed Party D's interest in pursuing a minority equity investment in the Company.

47.    During January and February 2017, Morgan Stanley and BofA Merrill Lynch contacted approximately 10 additional parties to discuss the possibility of a transaction with the Company.  Among others, parties referred to in the Recommendation Statement as "Party E," "Party F," "Party G," "Party H," "Party I," and "Party J," expressed interest in a transaction with Time.

48.    On January 17, 2017, defendant Battista received a non-binding letter from Meredith proposing a cash and stock transaction valued at $20.00 per share, and indicated that Meredith would be willing to consider an all-cash transaction following due diligence.

49.    Over the next several weeks, the Company negotiated confidentiality agreements with several of the parties who had expressed interest in a transaction with the Company, including Meredith.

50.    On February 16, 2017, Party B sent a revised proposal to defendant Battista offering to acquire the Company for a price in the range of $20.00-$21.00 per share and indicating that Party C would be part of a consortium with Party B.

51.    In late February and early March 2017, Time entered into confidentiality agreements with additional parties.

52.    In March 2017, Meredith, and Party B and Party C together, submitted updated proposals.

53.     On March 29 and April 1, 2017, respectively, Time executed confidentiality agreements with parties referred to in the Recommendation Statement as "Party K" and "Party L."

54.     On April 25, 2017, the Company received a best and final offer from Meredith to acquire the Company for $18.00 per share, consisting of $15.50 in cash and $2.50 in Meredith stock.

55.     At an April 27, 2017 Board meeting, the Board determined to discontinue discussions regarding a sale of the Company and to instead pursue a stand-alone strategy.

56.     On May 10, 2017, Morgan Stanley received a letter from Party C requesting a waiver of the standstill and other restrictions in its confidentiality agreement with the Company in order to deliver, within 60 days of receiving the waiver, a bid to acquire the Company at a target price of $20.00 per share, but no less than $18.00 per share.  The Company declined to grant the waiver.

57.     In October 2017, Lacy conveyed to defendant Battista Meredith's continued interest in acquiring Time.

58.     On November 9, 2017, Lacy presented a proposal to defendant Battista to acquire the Company for $16.00 per share in cash.  The proposal included, among other things, an executed equity commitment letter from Koch Equity Development LLC ("Koch").

59.     One week later, on November 16, 2017, Party C's principal equity investor contacted Debevoise & Plimpton LLP ("Debevoise"), the Company's legal advisor, to request a waiver of its standstill, which Debevoise relayed to the Company.

60.     Following negotiations, the boards of directors of Meredith and Time agreed to a transaction at $18.50 per share.

61.    On November 26, 2017, Morgan Stanley and BofA Merrill Lynch each rendered its fairness opinion and the Board subsequently approved the Merger Agreement.  Later that day, the Company and Meredith executed the Merger Agreement.

**The Proposed Transaction**

62.    On November 26, 2017, Time issued a press release announcing the Proposed Transaction.  The press release stated, in relevant part:

> **(NEW YORK, NY, November 26, 2017)**—Time Inc. (NYSE: TIME) today announced that it has entered into a definitive agreement to be acquired by Meredith Corporation (NYSE: MDP). Under the terms of the agreement, Meredith will make an $18.50 per share cash tender offer to acquire all outstanding Time Inc. shares for a total transaction value of approximately $2.8 billion, including the assumption of debt and net of cash acquired. The transaction has been unanimously approved by the Boards of Directors of Meredith and Time Inc., and is expected to close during the first quarter of 2018. The $18.50 per share price represents a 46% premium over the closing price on November 15, 2017, the day prior to media reports about the transaction, and a 66% premium over the 10-day volume weighted average trading price ending on that day.
>
> John Fahey, Chairman of the Board, said, "Time Inc.'s Board of Directors has unanimously determined that this all-cash transaction, and the immediate, certain value it provides, is in the best interests of the Company and its shareholders. On behalf of the entire Board, I thank Rich Battista for his strong and exemplary leadership. We also thank the management team and all Time Inc. employees, who together have made significant progress transforming one of the world's most iconic and historically significant publishing companies into a leading multiplatform media enterprise."
>
> Rich Battista, President and CEO of Time Inc., stated, "I am proud of our accomplishments and thank the talented teams across the Company for their extraordinary work, relentless commitment, and passion. Together, we moved quickly and successfully to launch, grow, and advance our multi-platform offerings during unprecedented times in the media sector. Time Inc. now engages over 230 million consumers across digital and print every month through a portfolio of premium, iconic brands that are well positioned to continue to be powerful voices in media for many years to come."
>
> The transaction is subject to customary closing conditions and regulatory approvals, including clearance under the Hart-Scott-Rodino Antitrust Improvements Act.

Battista will work closely with the Meredith management team to ensure a smooth transition through the closing date. Upon the closing, it is expected that Battista will leave the Company.

**Insiders' Interests in the Proposed Transaction**

63.     Meredith and Time insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of Time.

64.     For example, pursuant to the Merger Agreement, each outstanding and vested Company stock option, restricted stock unit, performance stock unit, deferred stock unit, and unvested performance stock unit granted under the Company's Long-Term Incentive Outperformance Program, which will be deemed earned at 50% based on the merger consideration, will be converted into the right to receive cash payments.  The following table summarizes the cash payments the executive officers and directors stand to receive in connection with their stock options, restricted stock units and performance stock units:

| Name | Number of In-the-Money Unvested Company Stock Options Subject to Acceleration (#) (a) | Value of Accelerated Company Stock Options ($) (b) | Number of Unvested Company RSUs Subject to Acceleration (#) | Value of Accelerated Company RSUs ($) (c) | Number of Company OPP PSUs Subject to Acceleration (#) | Value of Accelerated Company OPP PSUs ($) (d) | Number of Company PSUs Subject to Acceleration (#) | Value of Accelerated Company PSUs ($) (e) | Total ($) |
|---|---|---|---|---|---|---|---|---|---|
| Richard Battista | 428,755 | 1,784,471 | 104,980 | 1,942,130 | 56,819 | 1,051,152 | 78,125 | 1,445,313 | 6,223,066 |
| Susana D'Emic | 200,000 | 860,000 | 42,308 | 782,698 | 17,046 | 315,351 | 15,625 | 289,063 | 2,247,112 |
| Gregory Giangrande | 264,377 | 1,125,233 | 33,470 | 619,195 | 22,728 | 420,468 | 13,020 | 240,870 | 2,405,766 |
| Jennifer Wong | 264,377 | 1,125,233 | 53,198 | 984,163 | 22,728 | 420,468 | 16,927 | 313,150 | 2,843,014 |
| Mark Ford | 104,613 | 431,006 | 28,714 | 531,209 | 22,728 | 420,468 | — | — | 1,382,683 |
| Joseph Ripp | — | — | — | — | 56,818 | 1,051,133 | — | — | 1,051,133 |
| Jeffrey J. Bairstow | — | — | — | — | — | — | — | — | — |

65.     Further, if they are terminated in connection with the Proposed Transaction, Time's named executive officers are set to receive substantial cash payments in the form of golden parachute compensation as set forth in the following table:

| Name | Cash ($) (1) | Equity ($) (2) | Perquisites/Benefits ($) (3) | Tax Reimbursement ($) (4) | Total ($) |
|---|---|---|---|---|---|
| Richard Battista (5) | 7,429,151 | 6,223,066 | 34,172 | 1,650,519 | 15,336,908 |
| Susana D'Emic (5) | 3,116,082 | 2,247,112 | 1,538 | — | 5,364,732 |
| Gregory Giangrande (5) | 3,355,781 | 2,405,766 | 33,521 | — | 5,795,068 |
| Jennifer Wong (5) | 3,595,479 | 2,843,014 | 1,764 | — | 6,440,257 |
| Mark Ford (5) | 3,339,377 | 1,382,683 | 25,566 | — | 4,747,626 |
| Joseph Ripp (5)(6) | — | 1,051,133 | — | — | 1,051,133 |
| Jeffrey J. Bairstow (5)(7) | — | — | — | — | — |

## The Recommendation Statement Contains Material Misstatements or Omissions

66.    The defendants filed a materially incomplete and misleading Recommendation Statement with the SEC and disseminated it to Time's stockholders.  The Recommendation Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to tender their shares in connection with the Tender Offer or seek appraisal.

67.    Specifically, as set forth below, the Recommendation Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) Time's financial projections, relied upon by Time's financial advisors Morgan Stanley and BofA Merrill Lynch; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinions provided by Morgan Stanley and BofA Merrill Lynch; (iii) the background process leading to the Proposed Transaction; and (iv) Morgan Stanley's and Company insiders' potential conflicts of interest.  Accordingly, Time stockholders are being asked to make a decision whether to tender their shares in connection with the Tender Offer or seek appraisal without all material information at their disposal.

### *Material Omissions Concerning Time's Financial Projections*

68.    The Recommendation Statement is materially deficient because it fails to disclose material information relating to the Company's intrinsic value and prospects going forward.

69.    First, the Recommendation Statement omits material information regarding Time management's financial projections and the financial analyses performed by the Company's financial advisors, Morgan Stanley and BofA Merrill Lynch.

70.    For example, the Recommendation Statement states that "Morgan Stanley calculated a range of implied values per Share using the estimated future unlevered free cash flows reflected in the Long-Range Plan and the Consensus Street Case for the period from September 30, 2017 through December 31, 2022" (Recommendation Statement at 40), but fails to disclose the Company's unlevered free cash flows for 2017 through 2022 and further fails to disclose the line items utilized to calculate the Company's unlevered free cash flows, including: (i) Adjusted OIBDA (for 2022 only); (ii) stock based compensation, (ii) taxes, (iii) capital expenditures, and (iv) changes in net working capital.

71.    Similarly, the Recommendation Statement states that "BofA Merrill Lynch calculated a range of implied values per Share using the estimated future unlevered free cash flows reflected in the Long-Range Plan for the period from September 30, 2017 through December 31, 2021" (Recommendation Statement at 41), but fails to disclose the Company's unlevered free cash flows for the projection period and further fails to disclose the line items utilized to calculate the Company's unlevered free cash flows, including: (i) stock based compensation, (ii) taxes, (iii) capital expenditures, (iv) changes in net working capital; (v) pension costs, (vi) restructuring costs, (vii) other investing activities, and (viii) net proceeds for divested assets.

72.    Also with respect to Time management's financial projections, the Recommendation Statement fails to disclose the 2022 Forecasts that were "extrapolated based on the direction of the management of the Company" (Recommendation Statement at 40) or any

details of how Morgan Stanley extrapolated Time management's Long-Range Plan (referred to in the Recommendation Statement as the "Long-Range Plan") and the Wall Street consensus estimates (referred to in the Recommendation Statement as the "Consensus Street Case") utilized in its analyses.

73.    The Recommendation Statement further fails disclose the Consensus Street Case estimates utilized by Morgan Stanley and BofA Merrill Lynch in their analyses including, but not limited to (i) the estimated Adjusted OIBDA for 2017 and 2022 utilized in Morgan Stanley and BofA Merrill Lynch's *Leveraged Buyout Analysis*; (ii) the estimated Adjusted OIBDA for 2018 utilized in Morgan Stanley and BofA Merrill Lynch's *Public Company Multiples* analysis and Morgan Stanley's *Present Value of Future Stock Price Analysis*; and (iii) the unlevered free cash flow projections for 2017 through 2022 utilized in Morgan Stanley's *Discounted Cash Flow Analysis*.

74.    The omission of this information renders the statements in the "Company Management Forecasts" and "Financial Analyses and Opinions" sections of the Recommendation Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Morgan Stanley and BofA Merrill Lynch's Financial Analyses***

75.    The Recommendation Statement describes Morgan Stanley and BofA Merrill Lynch's fairness opinions and the various valuation analyses performed in support of their opinion. However, the description of Morgan Stanley and BofA Merrill Lynch's fairness opinions and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, Time's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on

Morgan Stanley and BofA Merrill Lynch's fairness opinions in determining whether to tender their shares in connection with the Tender Offer or seek appraisal. This omitted information, if disclosed, would significantly alter the total mix of information available to Time's stockholders.

76.    With respect to Morgan Stanley's *Discounted Cash Flow Analysis*, the Recommendation Statement fails to disclose: (i) the Long-Range Plan and Consensus Street Case estimates of unlevered free cash flow for the Company for 2017 through 2022; (ii) the terminal year estimate of Adjusted OIBDA for the Long-Range Plan and Consensus Street Case; (iii) the inputs and assumptions underlying the discount rate range of 6.6% to 7.6%; and (iv) the implied perpetuity growth rates resulting from the analysis.

77.    With respect to BofA Merrill Lynch's *Discounted Cash Flow Analysis*, the Recommendation Statement fails to disclose: (i) the Long-Range Plan estimates of unlevered free cash flow for the Company for 2017 through 2021; (ii) the inputs and assumptions underlying the discount rate range of 7.5% to 9.0%; and (iii) the implied perpetuity growth rates resulting from the analysis.

78.    With respect to Morgan Stanley's and BofA Merrill Lynch's respective *Present Value of Future Stock Price Analysis*, the Recommendation Statement fails to disclose: (i) the inputs and assumptions underlying the respective discount rates of 10.5% and 11.0%; and (ii) the Consensus Street Case 2018 estimated Adjusted OIBDA utilized in Morgan Stanley's analysis.

79.    When a banker's endorsement of the fairness of a transaction is touted to stockholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

80.    The omission of this information renders the statements in the "Financial Analyses and Opinions" and "Company Management Forecasts" sections of the

Recommendation Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning the Background Process of the Proposed Transaction***

81.    The Recommendation Statement omits material information relating to the sale process leading up to the Proposed Transaction.

82.    According to the Recommendation Statement, "the standstill agreements with Party C and Party C's principal equity investor (as well as those with Party B and Party L), unlike the other standstills entered into by the Company, would not automatically terminate upon entry into a definitive merger agreement." Recommendation Statement at 30. The Recommendation Statement further discloses that "the standstills with Party C and Party C's principal equity investor permitted such parties to make confidential requests for waivers" (id.), but fails to disclose whether the standstills with Party B and Party L similarly permit such parties to make confidential requests for waivers.

83.    The disclosure of the terms of these standstill provisions is crucial to Time stockholders being fully informed of whether their fiduciaries have put in place restrictive devices to foreclose a topping bid for the Company.

84.    The omission of this information renders the statements in the "Background of the Merger; Reasons for the Recommendation" section of the Recommendation Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Morgan Stanley's and Company Insiders' Potential Conflicts of Interest***

85.    Further, the Recommendation Statement fails to disclose material information concerning the potential conflicts of interest faced by Time insiders and Morgan Stanley in acting as the Company's financial advisor.

86.     Although the Recommendation Statement discloses the services performed and compensation Morgan Stanley has received from Time and Koch Industries Inc., the Recommendation Statement fails to disclose whether Morgan Stanley has performed any services for Meredith in the two years prior to the signing of the Merger Agreement, and any fees received for providing such services.

87.     Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

88.     In addition, although Time's November 26, 2017 press release announcing the Proposed Transaction indicates defendant Battista will not continue with the combined company, the Recommendation Statement fails to disclose whether any other Time officers or directors will continue with the combined company after completion of the Proposed Transaction.  The Recommendation Statement further fails to disclose the details of any employment related discussions and negotiations that occurred between Meredith and Time executive officers, including who participated in all such communications, when they occurred, and their content, as well as whether any of Meredith's prior proposals or indications of interest mentioned management retention.

89.     Communications regarding post-transaction employment and merger-related benefits during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

90.    The omission of this information renders the statements in the "Financial Analyses and Opinions," "Background of the Merger; Reasons for the Recommendation," and "Arrangements with Current Executive Officers and Directors of the Company" sections of the Recommendation Statement false and/or materially misleading in contravention of the Exchange Act.

91.    The Individual Defendants were aware of their duty to disclose this information and acted negligently (if not deliberately) in failing to include this information in the Recommendation Statement.  Absent disclosure of the foregoing material information prior to the expiration of the Tender Offer, Plaintiff and the other members of the Class will be unable to make a fully-informed decision whether to tender their shares in favor of the Proposed Transaction or seek appraisal and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

### Class Claims Against All Defendants for Violations of Section 14(d) of the Exchange Act and SEC Rule 14d-9

92.    Plaintiff repeats all previous allegations as if set forth in full.

93.    Defendants have caused the Recommendation Statement to be issued with the intention of soliciting Time stockholders to tender their shares in the Tender Offer.

94.    Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder require full and complete disclosure in connection with tender offers.

95.    The Recommendation Statement violates Section 14(d)(4) and Rule 14d-9 because it omits material facts, including those set forth above, which omission renders the Recommendation Statement false and/or misleading.

96.     Defendants knowingly or with deliberate recklessness omitted the material information identified above from the Recommendation Statement, causing certain statements therein to be materially incomplete and therefore misleading.   Indeed, while defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Proposed Transaction, they allowed it to be omitted from the Recommendation Statement, rendering certain portions of the Recommendation Statement materially incomplete and therefore misleading.

97.     The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff and the Class, who will be deprived of their right to make an informed decision whether to tender their shares or seek appraisal if such misrepresentations and omissions are not corrected prior to the expiration of the Tender Offer.  Plaintiff and the Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that defendants' actions threaten to inflict.

## COUNT II

**Class Claims Against All Defendants for Violations of Section 14(e) of the Exchange Act**

98.     Plaintiff repeats all previous allegations as if set forth in full.

99.     Defendants violated Section 14(e) of the Exchange Act by issuing the Recommendation Statement in which they made untrue statements of material facts or failed to state all material facts necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading, or engaged in deceptive or manipulative acts or practices, in connection with the Tender Offer.

100.     Defendants knew that Plaintiff would rely upon their statements in the Recommendation Statement in determining whether to tender his shares pursuant to the Tender Offer.

101.     As a direct and proximate result of these defendants' unlawful course of conduct in violation of Section 14(e) of the Exchange Act, absent injunctive relief from the Court, Plaintiff has sustained and will continue to sustain irreparable injury by being denied the opportunity to make an informed decision in deciding whether or not to tender his shares or seek appraisal.

## COUNT III

### Class Claims Against the Individual Defendants for
### Violation of Section 20(a) of the Exchange Act

102.     Plaintiff repeats all previous allegations as if set forth in full.

103.     The Individual Defendants acted as controlling persons of Time within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers or directors of Time and participation in or awareness of the Company's operations or intimate knowledge of the false statements contained in the Recommendation Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

104.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Recommendation Statement and other statements alleged by Plaintiff to be misleading prior to or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

105.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.  The Recommendation Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were, thus, directly involved in the making of this document.

106.     In addition, as the Recommendation Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction.  The Recommendation Statement purports to describe the various issues and information that they reviewed and considered — descriptions which had input from the Individual Defendants.

107.     By virtue of the foregoing, the Individual Defendants have violated section 20(a) of the Exchange Act.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Time, and against defendants, as follows:

A.     Ordering that this action may be maintained as a class action and certifying Plaintiff as the Class representative and Plaintiff's counsel as Class counsel;

B.     Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

C.     In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff and the Class;

D.     Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.     Granting such other and further relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury.

Dated:  December 18, 2017

**WEISSLAW LLP**

By

Richard A. Acocelli
1500 Broadway, 16th Floor
New York, New York 10036
Telephone: 212/682-3025
Facsimile: 212/682-3010
Email: racocelli@weisslawllp.com

*Attorneys for Plaintiff*