```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------- X
                                       :
JOEL ROSENFELD, on behalf of himself and :    17cv9886 (DLC)
all others similarly situated,         :      17cv9971 (DLC)
                                       :
              Plaintiff,               :      OPINION AND ORDER
                                       :
         -v-                           :
                                       :
TIME INC., RICHARD BATTISTA, DAVID A.  :
BELL, JOHN M. FAHEY, MANUEL A.         :
FERNANDEZ, DENNIS J. FITZSIMONS, BETSY :
D. HOLDEN, KAY KOPLOVITZ, RONALD S.    :
ROLFE, DANIEL L. ROSENWEIG, KATIE J.   :
STANTON, and MICHAEL P. ZEISSER,       :
                                       :
              Defendants.              :
                                       :
-------------------------------------- :
                                       :
DAVID PILL, on behalf of himself and all :
others similarly situated,             :
                                       :
              Plaintiff,               :
                                       :
         -v-                           :
                                       :
TIME INC., RICHARD BATTISTA, DAVID A.  :
BELL, JOHN M. FAHEY, MANUEL A.         :
FERNANDEZ, DENNIS J. FITZSIMONS, BETSY :
D. HOLDEN, KAY KOPLOVITZ, RONALD S.    :
ROLFE, DANIEL L. ROSENWEIG, KATIE J.   :
STANTON, and MICHAEL P. ZEISSER,       :
                                       :
              Defendants.              :
                                       :
-------------------------------------- X
```

APPEARANCES:

For plaintiff Joel Rosenfeld:
Richard Adam Acocelli, Jr.
WeissLaw LLP
1500 Broadway, Suite 1601
New York, New York 10036

For plaintiff David Pill:

```
Carl Lester Stine
Wolf Popper LLP
845 Third Avenue
New York, New York 10022

For the defendants:
Maeve L. O'Connor
Debevoise & Plimpton LLP
919 Third Avenue
New York, New York 10022
```

DENISE COTE, District Judge:

Merger and acquisition ("M&A") transactions in public companies have long been accompanied by shareholder litigation. Historically, such litigation has been brought as derivative actions in Delaware state courts, the state in which many large companies are incorporated.  But recent developments in Delaware corporate law have discouraged derivative actions challenging M&A transactions on the basis of allegedly inadequate disclosures.

Accordingly, these lawsuits took a different tack.  They sought equitable relief on behalf of a putative class of shareholders for federal securities law violations, but were quickly dismissed by the named plaintiffs before a lead plaintiff could be appointed pursuant to the procedures set out in the Private Securities Litigation Reform Act ("PSLRA"), Pub. L. 104-67, 109 Stat. 737 (codified as amended in scattered sections of 15 U.S.C.).  This Opinion addresses whether, if an individual plaintiff voluntarily dismisses a securities claim with prejudice, a court has an obligation to conduct the

mandatory review for compliance with Rule 11(b), Fed. R. Civ. P. ("Rule 11"), otherwise contemplated by the PSLRA.  For the following reasons, such dismissals are not adjudications on the merits, and therefore no review for compliance with Rule 11 is required by the PSLRA.

## BACKGROUND

### A. M&A Litigation and Disclosure-Only Settlements

"In recent years, over 96% of publicly announced mergers have attracted a shareholder lawsuit, with many mergers attracting suits in multiple jurisdictions."  Matthew Cain & Jill Fisch et al., The Shifting Tides of Merger Litigation, 71 Vand. L. Rev. 603, 604 (Mar. 2018).  Among the most criticized aspects of M&A litigation is the so-called "disclosure-only merger litigation settlement," in which "the only relief provided to the plaintiff class was additional disclosure by the takeover parties."  Id. at 605.  Such settlements frequently take the form of additional disclosures in the proxy statement and no opposition to a fee award for plaintiff's counsel.  Id. at 612.  Sometimes these settlements are characterized as "mootness fees," in which the corporation moots the lawsuit by making the allegedly withheld disclosures, and pays plaintiffs' counsel a "voluntary" fee in return.  Id.  Such settlements principally benefit plaintiff's counsel.

Responding to criticism of such settlements, in In re Trulia, Inc. Stockholder Litig., 129 A.3d 884 (Del. Ch. 2016), the Delaware Chancery Court refused to approve a disclosure-only settlement on the basis that the additional disclosures provided in the proposed settlement were "immaterial" and that the settlement was "not fair or reasonable to Trulia's stockholders."  Id. at 907.  Trulia created the "plainly material" test for approval of a disclosure-only merger litigation settlement -- that is, that the supplemental disclosures must be plainly material.  The court explained that "[i]n using the term 'plainly material,' I mean that it should not be a close call that the supplemental information is material as that term is defined under Delaware law."  Id. at 898.

Trulia was widely viewed as heralding the demise of disclosure-only merger litigation settlements in Delaware. Post-Trulia, plaintiffs have begun bringing M&A lawsuits in other courts, particularly federal courts, as Rule 14a-9 disclosure cases.  Cain & Fisch, 71 Vand. L. Rev. at 631-32.  In 2016, nearly 43 such lawsuits were filed in federal court.  As of November 2017, 2017 was on track to see 113 such federal lawsuits, representing a substantial portion of M&A litigation nationwide.  Id. at 627.  According to Cain and Fisch, in the first ten months of 2017, only 9% of M&A transactions were

4

challenged in Delaware, while 87% of them were challenged in federal court.  Id. at 608.

Some federal courts have adopted the reasoning in Trulia. Most notably, in In re Walgreen Co. Stockholder Litig., the Seventh Circuit adopted Trulia's "plainly material" standard as a matter of federal securities law.  832 F.3d 718, 725 (7th Cir. 2016) (Posner, J.).  The Seventh Circuit added that:

> A class "representative who proposes that high transaction costs (notice and attorneys' fees) be incurred at the class members' expense to obtain [no benefit] . . . is not adequately protecting the class members' interests."  In re Aqua Dots Products Liability Litigation, 654 F.3d 748, 752 (7th Cir. 2011).  Courts also have "a continuing duty in a class action case to scrutinize the class attorney to see that he or she is adequately protecting the interests of the class, and if at any time the trial court realizes that class counsel should be disqualified, the court is required to take appropriate action."  In re Revlon, Inc. Shareholders Litigation, 990 A.2d 940, 955 (Del. Ch. 2010) (quoting 4 Newberg on Class Actions § 13:22, at 417 (2002)).

Id. at 725-26.  But see In re Hatteras Financial, Inc., Shareholder Litig., 286 F. Supp. 3d 727, 732, 740 (M.D.N.C. 2017) (awarding fees despite its finding of limited value in the supplemental disclosures).

**B.  The Instant Lawsuit**

On November 26, 2017, defendant Time, Inc. ("Time") announced that it had entered into an Agreement and Plan of Merger (the "Merger Agreement") to be acquired by Meredith Corporation for $18.50/share.  The price represented a 46%

5

premium over the closing price of Time's stock on the day prior to the media reports about the transaction.  The Merger Agreement was structured as a tender offer, to begin on December 12, 2017 and expire on January 10, 2018.  On December 12, Time filed a Solicitation/Recommendation Statement ("Recommendation Statement") on Schedule 14D-9 with the Securities and Exchange Commission ("SEC"), recommending that shareholders tender their shares to Meredith.

On December 18, plaintiff Joel Rosenfeld filed a putative class action lawsuit, and on December 21, plaintiff David Pill filed a similar lawsuit.  Both lawsuits brought claims against Time and its board of directors under Sections 14(d)(4), 14(e), and 20(a) of the Exchange Act of 1934 ("Exchange Act"), and SEC Rule 14d-9 promulgated thereunder.  The primary basis of the claims were the allegedly inadequate disclosures contained in the Recommendation Statement.  Both lawsuits sought preliminary and permanent injunctive relief against the acquisition proceeding further, rescission if the transaction were consummated, and attorneys' fees and costs.

On December 22, this Court held a conference in the Rosenfeld case.  The PSLRA certification filed with Rosenfeld's complaint indicates that Rosenfeld held 100 shares of Time, for which he had paid under $2,000.  At the conference, Rosenfeld's counsel had difficulty offering even basic details about his

client, such as his age and occupation. Counsel even had difficulty remembering who in his law firm had spoken to Rosenfeld regarding the lawsuit.

The Court required Rosenfeld's counsel to submit a letter providing Rosenfeld's age and occupation, history of service as a named plaintiff and other relationships he has with his counsel's firm, and his history of holdings in Time. The letter filed in response indicated that Rosenfeld was familiar with two attorneys at his counsel's firm through the community in which he lives, and had served as a named plaintiff in twelve actions filed by his counsel's firm. These lawsuits appear to have primarily challenged M&A transactions. According to the letter, Rosenfeld initiated the lawsuit by contacting his counsel upon reading the press release announcing the Merger Agreement.

Plaintiff Pill owned 8 shares of Time, and his investment was therefore worth under $200. Pill is a long-time client of his counsel's firm, to which he had been introduced by his father. Pill has served as a named plaintiff in nine actions commenced by his counsel's firm. These lawsuits apparently primarily challenged M&A transactions. Pill also asserts that he contacted his counsel upon reading the press release concerning the Merger Agreement, and authorized the filing of the Pill action.

An Order of December 22 required Rosenfeld to file a preliminary injunction motion by December 29, 2017, and scheduled a preliminary injunction hearing for January 9, 2018, the day before the tender offer was due to expire. In response to concerns raised by defense counsel at the conference, Rosenfeld was also required to address his standing to act as a class representative in the absence of compliance with the prerequisites of the PSLRA.[1]

One week later, on December 29, plaintiffs filed a letter indicating that defendants had agreed to disclose substantially all of the information requested in plaintiffs' complaints. Accordingly, plaintiffs did not file a preliminary injunction motion, as their claims had been "mooted." Plaintiffs indicated that they would be dismissing their individual claims with prejudice, and the putative class claims without prejudice.

After an extension of the tender offer period, the tender offer closed in late January 2018. The plaintiffs filed notices of voluntary dismissal on February 2, 2018, which dismissed the individual claims with prejudice and the putative class claims without prejudice. This Court then issued an Order directing the parties to brief three questions: whether the PSLRA governed these actions; if the PSLRA governed, whether a

---

[1] On December 26, 2017, the Pill case was consolidated with the Rosenfeld case, and placed on a similar schedule.

mandatory sanctions review was required; and whether any conduct of plaintiffs or their counsel merited sanctions. Defendants and plaintiffs each filed a brief in response.

## DISCUSSION

### I. Merger Litigation and the PSLRA

The rise of M&A litigation in federal courts raises new questions involving its intersection with the PSLRA. One of the questions suggested by defendants in this case is whether a plaintiff has standing to seek injunctive relief on behalf of a class prior to the appointment of a lead plaintiff.

The PSLRA provides for a relatively sedate process to appoint a lead plaintiff in a putative class action, at least by comparison to the timeframes often inherent in a tender offer. After the complaint is filed, a plaintiff has twenty days to publish notice in "a widely circulated national business-oriented publication or wire service . . . of the pendency of the action, the claims asserted therein, and the purported class period." 15 U.S.C. § 78u-4(3)(A)(i). Potential lead plaintiffs are given sixty days after the date of the notice to file a motion to serve as lead plaintiff for the class. Id. § 78u-4(a)(3)(A)(i)(II); see In re WorldCom, Inc. Sec. Litig., 294 F. Supp. 2d 392, 421 (S.D.N.Y. 2003).

The PSLRA encourages selection of an institutional or other responsible investor, frequently the lead plaintiff applicant

with the largest financial stake in the litigation, to serve as a class representative. WorldCom, 294 F. Supp. at 421. This process is designed to promote effective control of the litigation by shareholders rather than their counsel. Id. at 421 & n.19 (citing PSLRA, S.Rep. No. 104-98, 104th Cong. 1st Sess. 1, 6 (1995)). A court generally has 30 days to consider the motions to be appointed as lead plaintiff. § 78u-4(a)(3)(B)(i).

Under the PSLRA, a class is not certified before a lead plaintiff is appointed. The relevant section of the PSLRA uses the term "purported plaintiff class" in discussing classes prior to the appointment of a lead plaintiff. See 15 U.S.C. § 78u-4(a)(3)(B).

It is an open question in this Circuit whether class-wide preliminary injunctive relief is appropriate when that class is not yet certified. Generally, district courts addressing preliminary injunction motions on behalf of a putative class simultaneously address a class certification motion. Because, as described above, a lead plaintiff may not be appointed and a class may not be certified prior to the close of an M&A transaction, it is at least open to question whether a putative class may obtain preliminary injunctive relief in these transactions. The determination of that question will have to await future litigation.

Nonetheless, as this case illustrates, the PSLRA's goal of encouraging control of the litigation by a responsible investor would be frustrated by allowing named plaintiffs like those in this litigation to obtain preliminary relief on behalf of a putative class.  These named plaintiffs had a very limited financial stake in the actions.  Further inquiry would have been necessary to establish that either named plaintiff was entitled to be appointed a lead plaintiff.  Permitting simply anyone who filed a putative class action to seek preliminary injunctive relief on behalf of a class prior to the appointment of the lead plaintiff would, at least without a substantial showing of adequacy, likely frustrate the goals of the PSLRA.

Courts are permitted to consider, as a matter of equity, whether the injunctive relief sought by a putative class is actually in the best interests of the class, and whether the class representatives can be trusted to represent those interests.  Rule 23(a)(4), Fed. R. Civ. P., requires a court to determine whether "the representative parties will fairly and adequately protect the interests of the class."  This inquiry is particularly important in light of the abuses that Congress sought to curb through its passage of the PSLRA.

These cases present an apt example of the dangers inherent in the pursuit of a putative class action challenging the adequacy of disclosures for an M&A transaction.  If a

11

preliminary injunction against the closing of the tender offer had been granted, two plaintiff shareholders with minimal stakes in the litigation would be holding up a multi-billion dollar transaction, with potentially enormous consequences for all shareholders.  Although shareholders should, of course, be fully informed before giving up valuable rights by participating in a tender offer, the Trulia court correctly observed that oftentimes the additional disclosures sought by the named plaintiffs in this type of action are valueless to the shareholders.

Even though the standard for succeeding on a Rule 14a-9 material omission claim is high, see Seinfeld v. Gray, 404 F.3d 645, 650 (2d Cir. 2005), the time frames in which an M&A transaction must close usually discourage defendants from attempting to defeat pre-merger litigation on the merits, even when that litigation is abusive.  And, even if settlement costs are minimal in comparison to the size of the M&A transaction, transaction costs associated with litigation end up being visited on shareholders, for no or little appreciable benefit. See Walgreen, 832 F.3d at 725.  Because of the swift dismissal here, this is not the case in which these issues may be more fully explored.

## II.  Voluntary Dismissals with Prejudice and the PSLRA

15 U.S.C. § 78u-4(c)(1) requires that:

12

> [i]n any private action arising under [the Exchange Act], upon final adjudication of the action, the court shall include in the record specific findings regarding compliance by each party and each attorney representing any party with each requirement of Rule 11(b) of the Federal Rules of Civil Procedure as to any complaint, responsive pleading, or dispositive motion.

This provision, unlike certain other provisions of the PSLRA, is not limited to putative class action litigation.  For the reasons previously explained by this Court, however, a voluntary dismissal without prejudice is not a "final adjudication" that triggers a compelled review by the court of compliance with the dictates of Rule 11.  Blaser v. Bessemer Trust Co., N.A., No. 01cv11599(DLC), 2002 WL 31359015, at *3 (S.D.N.Y. Oct. 21, 2002); Unite Here v. Cintas Corp., 500 F. Supp. 2d. 332, 336-37 (S.D.N.Y. 2007).  Other courts in this district have since adopted the same analysis.  See Manchester Mgmt. Co., LLC v. Echo Therapeutics, Inc., 297 F. Supp. 3d 451, 465-66 (S.D.N.Y. 2018) (collecting cases).

Blaser and the cases that have followed do not address the situation in this case:  whether a voluntary dismissal with prejudice is a final adjudication within the meaning of the PSLRA.  The principles outlined in Blaser, however, compel the conclusion that it is not.  Accordingly, the PSLRA does not require a review of the plaintiffs' complaints under Rule 11.  The Court therefore will not review them for that purpose.

**CONCLUSION**

The Clerk of Court shall close these cases as voluntarily dismissed.

SO ORDERED:

Dated: New York, New York
       August 30, 2018

```
                                   _____
                                        DENISE COTE
                                   United States District Judge
```